UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEITSCH PLASTICS COMPANY, INC. <br><br>   Plaintiff, <br><br>   v. <br><br> GREDALE LLC, <br><br>   Defendant. <br><br> AND RELATED COUNTERCLAIM | No. CV 21-212 PA (MRWx) <br><br> FINDINGS OF FACT AND CONCLUSIONS OF LAW |

  Plaintiff Deitsch Plastics Company, Inc. ("Plaintiff" or "Deitsch Plastics") commenced this action on January 11, 2021.  The Court provided Plaintiff with leave to amend to adequately allege a basis for the Court's subject matter jurisdiction.  Deitsch Plastics' Third Amended Complaint alleges a single claim for breach of contract against defendant Gredale LLC ("Defendant" or "Gredale").  Gredale filed a Counterclaim alleging a single claim for breach of warranty.

  Prior to the Pretrial Conference, the parties stipulated to a Court Trial.  Consistent with the Court's procedures, the parties filed their Opening Trial Briefs, their respective proposed Findings of Fact and Conclusions of Law, their objections to each other's proposed Findings of Fact and Conclusions of Law, declarations of the direct testimony of their

proffered witnesses, and evidentiary objections to the trial declarations. The Court conducted a Court Trial on January 11, 2022. Following the Court Trial, the parties submitted post-trial briefs and revised proposed Findings of Fact and Conclusions of Law.

The Court now makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a). Any finding of fact that constitutes a conclusion of law is hereby adopted as a conclusion of law, and any conclusion of law that constitutes a finding of fact is hereby adopted as a finding of fact.

**I.    Findings of Fact**

1. Deitsch Plastics is incorporated and has its principal place of business in Connecticut.

2. Gredale is a limited liability company. None of Gredale's members is a citizen of Connecticut.

3. Deitsch Plastics alleges that Gredale owes it $162,598.38 as a result of Gredale having failed to pay Deitsch Plastics for material it delivered to Gredale in Los Angeles.

4. The Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

5. Deitsch Plastics is a supplier of fabric and other material, including a polyvinylchloride ("PVC") fabric.

6. Gredale is involved in the manufacture of garments, including the cutting and sewing of fabric.

7. In 2020, after the start of the COVID-19 pandemic, Gredale began ordering personal protective equipment ("PPE") from China and manufacturing isolation gowns in Los Angeles for resale to health care providers.

8. In May 2020, Gredale and Deitsch Plastics spoke about Deitsch Plastics supplying its PVC fabric to Gredale for use in reusable medical isolation gowns.

9. The parties dispute the nature of their discussions concerning Gredale's requirements for the fabric for the reusable medical isolation gowns it intended to produce. Gredale, through its principal Greg Lorber ("Lorber"), and employee Aaron Zari ("Zari"),

-2-

1  contend that in the parties' discussions, "it was clear that for the fabric to be considered
2  reusable, it needed to be run repeatedly through a medical industrial wash which complied
3  with the [Centers for Disease Control and Prevention ("CDC")] guidelines (160° for 25
4  minutes)." (Zari Decl. ¶ 2.)  Yasef Deitsch ("Deitsch"), Deitsch Plastics' principal, states
5  that the parties "never discussed the temperature of the washing for the gowns." (Deitsch
6  Decl. ¶ 2.)  None of the contemporaneous text messages or other written communications
7  between the parties reference any particular washing temperature, health and safety
8  regulations, or other specific requirements for the gowns or PVC fabric.

9       10.    Between May 15, 2020, and June 4, 2020, Gredale ordered $284,750.00 of
10 PVC fabric from Deitsch Plastics.  Gredale has not paid Detisch Plastics for the PVC fabric
11 it ordered, but another party paid $121,401.62 to Deitsch Plastics, leaving an unpaid balance
12 on the orders of $162,598.38.

13      11.    In May 2020, Gredale sold reusable medical isolation gowns it manufactured
14 using Deitsch Plastics' PVC Fabric to Zev Supplies, which sold the gowns on to Zev
15 Supplies' medical customers.  According to Lorber's Declaration, on or about June 5, 2020,
16 Lorber received a call from Dina Shanowitz at Zev Supplies who told Lorber that she had
17 received complaints from her customers that the neck and side ties were falling off during
18 the industrial washes her customers were subjecting the gowns to, that the PVC material was
19 distorting and wrinkling after the first wash, that the "cheesecloth" backing was
20 delaminating from the PVC layer, and that the gowns generally could not withstand the
21 industrial wash process.  (Lorber Decl. ¶ 13.)  Although Deitsch Plastics did not object to
22 this portion of Lorber's testimony, Lorber's statements concerning what Ms. Shanowitz told
23 him that her clients told her is double hearsay.  See Fed. R. Evid. 802 & 805.  Even if the
24 Court were to consider this inadmissible evidence, it would give it little weight.

25      12.    By mid-June 2020, and after consulting with Dietsch Plastics, Lorber
26 determined that the gowns could not be sold as "reusable" because they could not survive an
27 industrial wash at a temperature of at least 160°F for a minimum of 25 minutes and retain
28 substantially the same appearance as a new gown.  Gredale provided a discount to Zev

Supplies, some of the gowns were sold at substantially reduced prices as disposable gowns, and Gredale has been unable to sell approximately 51,000 of the gowns. Lorber examined some of the returned gowns and observed that they all had basically the same problems: the neck and waist ties were torn or in the process of tearing off, the PVC was separating from the poly/cotton backing, the fabric could not reliably hold a stitch after only one industrial wash, and the fabric was badly crinkled. (Lorber Decl. ¶ 21.)

13.   In support of its counterclaim for breach of warranty, Gredale proffered no expert testimony concerning industry standards related to reusable medical isolation gowns, washing procedures and temperatures, or other specialized knowledge.

14.   In its defense against the counterclaim for breach of warranty, Deitsch Plastics proffered the testimony of Donald Reynolds ("Reynolds"), whom Deitsch Plastics offered as an expert witness. Reynolds has worked as a custom tailor for over 20 years. Like Gredale, Reynolds also began manufacturing and selling reusable isolation gowns during the early days of the COVID-19 pandemic and used Deitsch Plastics' PVC fabric to do so. Reynolds testified that he sold hundreds of thousands of reusable medical isolation gowns using Deitsch Plastics' PVC fabric, that the gowns he produced could withstand 25 washes, and that an independent laboratory he retained tested his gowns and confirmed that the PVC fabric withstood 25 washes. These washes were done at lower temperatures than 160°F.

15.   Although not in his trial declaration, Reynolds testified at trial that the Food and Drug Administration ("FDA") has different standards for different levels of isolation gowns. Reynolds was not familiar with the CDC's guidelines, but testified that the FDA's regulations provide guidelines for isolation gowns. Reynolds also provided opinions concerning the design and sewing on Gredale's isolation gowns.

16.   Gredale objected to the qualifications of Reynolds to provide expert testimony concerning medical isolations gowns and the regulations and guidelines applicable to them. The Court concludes that although Reynolds has expertise concerning tailoring and sewing, and qualifies pursuant to Federal Rule of Evidence 702 as an expert on those matters, he lacks sufficient specialized knowledge concerning the FDA regulations, CDC guidelines,

1  and industry standards concerning medical isolation gowns to qualify as an expert on the
2  regulations, guidelines, and industry standards related to medical isolation gowns.
3  Moreover, even if Reynolds did qualify as an expert on those matters, the fact that he had
4  been supplying medical isolation gowns for a relatively short period of time beginning in
5  2020, and his lack of familiarity with the CDC guidelines, undermines the persuasiveness of
6  his testimony on those issues.

7      17.    The testimony from the witnesses for both Gredale and Deitsch Plastics
8  concerning the parties' communications regarding the qualities Gredale required for the
9  fabric for its reusable isolation gowns lacked credibility.  The Court has no confidence that
10 Gredale's requirements were communicated to Deitsch Plastics, or that Gredale even knew
11 what the requirements were when it ordered the PVC fabric from Deitsch Plastics.  Both
12 parties and the individuals involved were new to the medical gown industry during the
13 relevant time period.  Gredale has not established by a preponderance of the evidence that:
14 (1) there is a single washing standard for reusable isolation gowns; (2) Gredale
15 communicated to Deitsch Plastics that the gowns and PVC fabric would have to withstand
16 25 or more washes at 160°F; (3) Deitsch Plastic warranted, either impliedly or expressly,
17 that the PVC fabric would withstand 25 or more washes at 160°F; (4) the industry standard
18 requires gowns to withstand 25 or more washes at 160°F; or (5) that there is an industry
19 standard that "industrial wash" necessarily means a wash at 160°F.  Indeed, Lorber testified
20 that the term 160°F never came up in any communication between him and Deitsch.  (Trial
21 Trans. 107:20-22.)

22     18.    Additionally, even if Gredale had succeeded in establishing by a
23 preponderance of the evidence that Deitsch Plastics either expressly or impliedly warranted
24 the PVC fabric for a specific purpose, by relying on double hearsay, and not having a
25 qualified witness to present evidence concerning the cause of the problems its downstream
26 customers experienced, Gredale has failed to establish by a preponderance of the admissible
27 evidence that the gowns that failed were washed at 160°F, let alone that they failed because
28 of the temperature of the wash to which they were subjected.

-5-

## II. Conclusions of Law

1. "To prevail on a cause of action for breach of contract, the plaintiff must prove (1) the contract, (2) the plaintiff's performance of the contract or excuse for nonperformance, (3) the defendant's breach, and (4) the resulting damage to the plaintiff." Richman v. Hartley, 224 Cal. App. 4th 1182, 1186, 169 Cal. Rptr. 3d 475, 478 (2014). Here, Deitsch Plastics has established by a preponderance of the evidence that Gredale breached its contractual obligation to pay Deitsch Plastics for the material Deitsch Plastics provided to Gredale and that Deitsch Plastics' damages for this breach of contract are $162,598.38.

2. Gredale's counterclaim for breach of warranty does not specify if Gredale is pursuing a claim for breach of an express or implied warranty. Moreover, rather than provide the Court with the elements for a breach of warranty claim, whether express or implied, Gredale relies in its post-trial briefing and proposed Findings of Fact and Conclusions of Law on California Commercial Code section 2714. But section 2714 establishes the measure of damages for a breach of warranty, it does not provide the elements for such a claim. See Cal. Com. Code § 2714(1) ("The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount."); see also id. § 2714(3) (allowing, in a proper case, for incidental and consequential damages under California Commercial Code section 2715).

3. To prevail on a claim for breach of an express warranty, a plaintiff must prove: (1) that the defendant gave to the plaintiff a written warranty or made a statement of fact or promise to the plaintiff; (2) the product did not perform as stated or promised; (3) the plaintiff took reasonable steps to notify the defendant with a reasonable time that the product was not as represented; (4) the defendant failed to repair or provide another remedy as required by the warranty; (5) that plaintiff was harmed; and the failure of the product to be as represented was a substantial factor in causing the plaintiff's harm. See Judicial Council

of Cal. Civil Jury Instruction 1230; see also Cal. Com. Code § 2313.  Here, the Court concludes that Gredale has failed to establish by a preponderance of the evidence that Deitsch Plastics provided a written warranty or made a statement of fact concerning the PVC fabric with respect to its ability to withstand washes at any particular temperature or that the product did not perform as stated or promised.  The Court therefore concludes that Gredale has not sustained its burden to establish a claim for breach of express warranty.

4.  To prevail on a claim for a breach of the implied warranty of merchantability, a plaintiff must prove:  (1) that the plaintiff bought the product from the defendant; (2) at the time of purchase, defendant was in the business of selling these goods or held itself out as having special knowledge or skill regarding these goods; (3) the product was not of the same quality as those generally acceptable in the trade, was not fit for the ordinary purposes for which such goods are used, or did not conform to the quality established by the parties' prior dealing or by usage of trade.  See Judicial Council of Cal. Civil Jury Instruction 1231; see also Cal. Com. Code § 2314.  Here, the Court concludes that Gredale has failed to establish by a preponderance of the evidence that the PVC fabric provided by Deitsch Plastics was not of the same quality as those generally acceptable in the trade, was not fit for the ordinary purpose for which such goods are used, or did not conform to the quality established by the parties' prior dealing or by usage of trade.  The Court therefore concludes that Gredale has not sustained its burden to establish a claim for breach of the implied warranty of merchantability.

5.  To state a claim for a breach of the implied warranty of fitness for a particular purpose, a plaintiff must prove:  (1) that the plaintiff bought the product from the defendant; (2) that, at the time of purchase, the defendant knew or had reason to know that the plaintiff intended to use the product for a particular purpose; (3) that, at the time of purchase, the defendant knew or had reason to know that the plaintiff was relying on the defendant's skill and judgment to select or furnish a product that was suitable for the particular purpose; (4) that the plaintiff justifiably relied on the defendant's skill and judgment; (5) that the product was not suitable for the particular purpose; (6) that the plaintiff took reasonable steps to

notify the defendant within a reasonable time that the product was not suitable; (7) that the plaintiff was harmed; and (8) that the failure of the product to be suitable was a substantial factor in causing the plaintiff's harm. See Judicial Council of Cal. Civil Jury Instruction 1232; see also Cal. Com. Code § 2315.  Here, although Gredale has established by a preponderance of the evidence that Deitsch Plastics knew that Gredale intended to use the PVC fabric for reusable isolation gowns, the Court concludes that Gredale has failed to establish by a preponderance of the evidence that Deitsch Plastic knew or had reason to know that those reusable isolation gowns and the PVC fabric provided by Deitsch Plastics had to withstand washing at 160°F.  Additionally, in light of Reynolds' sales of reusable isolation gowns using Deitsch Plastics' PVC fabric, Gredale has also failed to establish by a preponderance of the evidence that the product was not suitable for use in reusable isolation gowns.  The Court therefore concludes that Gredale has not sustained its burden to establish a claim for breach of the implied warranty of fitness for a particular purpose.

## Conclusion

For all of the foregoing reasons, the Court concludes that Deitsch Plastics is entitled to a Judgment in its favor on its claim for breach of contract in the amount of $162,598.38, and that Deitsch Plastics is also entitled to a Judgment in its favor on Gredale's counterclaim for breach of warranty.  The Court will issue a Judgment consistent with these findings of fact and conclusions of law.

IT IS SO ORDERED.

DATED: May 6, 2022

_____
Percy Anderson
UNITED STATES DISTRICT JUDGE